MACK, Senior Judge,
concurring:
I write as one who, although never exposed to the scholarly exercise of Latin, heartily embraces the importance of “a common-sense understanding of human thought and expression” alluded to by our dissenting colleague. (Dissenting opinion at 866). Nevertheless, I differ with Judge Steadman’s ultimate premise that, statutorily speaking, as to who may petition for adoption, the phrase “any person,” in D.C.Code § 16-302 (1981), means “one person” and that the only “joint” adoption permitted thereunder is one by a married couple.
English dictionaries uniformly connote the versatility of a tiny three-letter word (“any”) by affording it an inordinate amount of space according to its use in meaning and context, e.g., as an adjective, pronoun or adverb. As an adjective it may be singular or plural— ie., “one out of many” or “some” “an indefinite number.”[1] When used as the antecedent of the word “one,” it means a single or individual person or thing.[2] When used as a pronoun, and as the antecedent of the word “person” (as here) it may connote the status of a person, i.e., “anybody.”[3]
Latin aside, therefore, Congress wisely saw fit as early as 1901, to provide in D.C.Code § 49-202 (1990) (see majority opinion at -), that “[wjords importing the singular number shall be held to include the plural, and vice versa, except where such construction would be unreasonable.” Such construction of the words “any person” in *863 § 16-302 is entirely reasonable, particularly in view of the language of D.C.Code § 16-305 (1981) which, in setting forth information that must be provided for adoption purposes, specifically states (with no reference to a married couple or a spouse) that “[i]f more than one petitioner joins in a petition, the requirements of this section apply to each.”
I reject, therefore, the argument that Judge Ferren’s opinion constitutes an unreasonable extension of the statutory scheme. I fully concur in that exhaustive opinion (with a few exceptions as to volunteered comments which do little more than reflect the author’s own thinking at various stages of his scholarly pursuit).[4] Because I personally have fears that excessive preoccupation with trees may sometimes obscure the forest, I am attaching hereto as an Appendix, a recent order by a trial judge who in agreeing to grant a “Motion to Reconsider” in yet another case, In re Petition for Adoption of a Minor Child, No. A-8-94 (D.C.Super.Ct. May 4, 1995), mirrors my thinking as to the primary question.[5]
APPENDIX
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA FAMILY DIVISION
IN THE MATTER OF THE PETITION OF FOR THE ADOPTION OF A MINOR CHILD
Adoption No. A-8-94
Judge Hedge

ORDER

This matter is before the court on Petitioners’ Motion for Reconsideration. Petitioners, D.S. and R.M., are adult women who have been in a committed relationship for over eight years. They jointly petitioned to adopt K.S., who has been living with them since November 1992. The court, sua sponte, issued an order, docketed on October 18, 1994, which directed the petitioners to submit an amended petition naming one or the other, but not both, as the petitioner. The basis for the order was the decision in In re Bruce M. & Mark D., which held that two unmarried individuals could not file a joint petition to adopt, regardless of the best interests of the child.[1]
The petitioners appealed the October 18, 1994 Order and filed a Motion to Reconsider with the trial court on February 2, 1995.[2] The motion was supported by voluminous briefs and affidavits. In addition, the District of Columbia filed a memorandum in support of the joint petition to adopt and the instant Motion to Reconsider. The District’s memorandum incorporated by reference the petitioners’ submissions, which included the government’s appellate brief in In re Bruce M.
Distilled to its essence, petitioners’ argument is that the adoption statute ensures that the best interests of the child are met and that any statutory construction analysis must be governed by this concept, as the plain statutory language does not preclude joint adoption by unmarried individuals. Thus, petitioners suggest, inter alia, that instead of looking to In re Bruce M., the court should be guided by In re L.S. & V.L. and In re W.S.D., which held that two unmarried persons in situations such as this *864 could adopt jointly.[3] The court agrees with the arguments of the petitioners and the government and will grant the Motion to Reconsider once the case is remanded from the Court of Appeals.
To analyze the issue, the coui't must first look to the statutory language and then, if the language is ambiguous, to the legislative history. D.C.Code § 16-302 states who may petition to adopt. It provides:
Any person may petition the court for a decree of adoption. A petition may not be considered by the court unless petitioner’s spouse, if he has one, joins in the petition, except that if either the husband or wife is a natural parent of the prospective adop-tee, the natural parent need not join in the petition with the adopting parent, but need only give his or her consent to the adoption. If the marital status of the petitioner changes after the time of filing the petition and before the time the decree of adoption is final, the petition must be amended accordingly.[4]
As is evident, the first sentence is simple and direct: “[a]ny person” may petition. “Any person,” however, may mean two persons. Under D.C.Code § 49-202, “[wjords importing the singular number shall be held to include the plural, and vice versa, except where such construction would be unreasonable.” [5]
The statute contemplates that two may adopt. First, § 16-302 discusses two persons adopting jointly within the context of those who are married. Second, § 16-305, which sets forth certain information that must be provided to adopt, specifically states that “[i]f more than one petitioner joins in a petition, the requirements of this section apply to each.”[6]
The remaining provisions of D.C.Code § 16-302 do not direct a contrary conclusion. They address specific concerns with respect to married petitioners. Specifically, the provision requiring a married person to secure the joint application of his or her spouse[7] assures that both have agreed to undertake responsibility for the adopted child. In this regard, it is the only statutory limitation to the broad language of the first sentence of the paragraph. The second provision of the paragraph allows a step-parent to adopt without the spouse having to adopt his or her own natural child,[8] thereby providing an exception to the marital requirement that both spouses must adopt. The plain and concise statutory language, therefore, permits the instant joint petition.[9]
Although principles of statutory construction permit the analysis to end with an examination of the plain language of the statute, which the court concludes permits the joint petition, it would be ignoring history to do so. There can be no question that when the adoption statutes were revised in 1937 and 1954, to say nothing of when they were enacted over a hundred years ago, the authors did not envision gay or lesbian couples filing a joint petition to adopt.[10] This historical perspective, however, does not end the inquiry either.
*865 As the prior Superior Court decisions cited above indicate, the issue is whether two unmarried people can file a joint petition. The sexual orientation of the petitioners, to the extent relevant, is to be considered under the factors of D.C.Code § 16-309, which address the fitness of those seeking to adopt and the best interests of the child.
The legislative history of the adoption provisions suggests that the statute was meant to be broad, or “elastic,” to meet changing circumstances.[11] Both the 1937 House Report and the 1954 Senate Report make reference to the need to modernize the statute “based on years of experience by welfare workers and child placement agencies,”[12] and, to some extent, found the need to explain further certain statutory requirements based upon confusion caused by the statute’s simplicity.[13]
Neither the breadth of the statute nor its legislative history, however, reflects a manifest intent to prohibit joint adoptions by unmarried persons. Indeed, when the legislature has chosen to limit who may avail themselves of certain statutory rights, it has done so with specificity.[14] Such specification is absent here.
Moreover, as the Court of Appeals has recognized, “[i]t is well settled that ‘[t]he object of a statute may be so general and its language so broad as to reach conditions fairly coming within its intent and sweep although such conditions did not come in to existence until years after its enactment.” [15]
The basic intent of the adoption law is to provide the “means by which a child could become a legal member of a family not his own.” [16] To this end, the original act consisted “of one short paragraph making the order of adoption mandatory if the judge finds that a petitioner is a proper person to have custody of a child_” [17] This legislative intent is further reflected in decades of court decisions which instruct that the “decisive consideration is the best interest of the child.”[18] Thus, the “best interests” test sets an elastic standard. This standard, in turn, reflects a statutory framework which does not limit adoption, as long as the petitioner is fit and it is in the child’s best interest.[19]
It is well-settled that the meaning of the language of a statute should be disturbed only when there is a “ ‘clearly expressed legislative intention’ contrary to that language.” [20] Because there is no manifest leg *866 islative intent to the contrary, “ ‘the literal interpretation of the statutory language is conclusive.’ ”[21]
Finally, with respect to the factual record in this case, petitioners have demonstrated that it is in K.S.’s best interest that the petition be joint.
[[Image here]]
Accordingly, it is by the court this 4th day of May 1995,
ORDERED that the petitioners notify the Court of Appeals that the court will grant their Motion to Reconsider, if the case is remanded; and it is further
ORDERED that upon remand of the case, the Clerk will enter a notation in the jacket that the petitioners’ Motion to Reconsider is granted, as of the date the ease is received from the Court of Appeals; and it is further ORDERED that upon remand of the case, the order entered on October 18, 1994, shall be vacated, effective on the date of the remand, and the Clerk is ordered to so note in the jacket.
/s/ Brook Hedge
BROOK HEDGE, JUDGE,
(signed in chambers)

. Black’s Law Dictionary 94 (6th ed. 1990); see also The American College Dictionary 7 (1970); Webster’s Third New International Dictionary 97 (1986).

. The American College Dictionary, supra n. 1; Webster’s, supra n. 1.

. The American College Dictionary, supra n. 1; Webster’s, supra n. 1.

. I refer to such statements as "At this point in the analysis, therefore, we are not able to say either that the adoption statute "plainly,” i.e., conclusively, allows adoption by an unmarried couple or that the statute "plainly” limits joint adoption to a "husband and wife” (as the 1895 statute did).” (Majority opinion at 849).

. In the instant case, all participants, including the parties, the Department of Human Services, the Corporation Counsel, as well as the trial court, have agreed that the adoption is in the best interest of the child. As to the order in the other case appended hereto, I have deleted, in the interest of brevity, the facts relevant to the best interest issue.

. In re Bruce M. and Mark D., 122 Wash.D.L.Rptr. 1009 (D.C.Super.Ct. May 25, 1994) appeal filed, No. 94-FS-620 (D.C.1994) (argued Apr. 4, 1995).

. The October 18, 1994 Order was entered by the judge previously assigned to the adoption calendar. The Motion to Reconsider was filed after the calendar was reassigned but retained the prior judge's name in the caption. It was mutually agreed between the prior and current judges on the calendar that the judge currently assigned would decide the instant motion.

. In re L.S. & V.L., 119 Wash.D.L.Rptr. 2249 (D.C.Super.Ct. Oct. 21. 1991); In re W.S.D., No. A-308-90 (D.C.Super.Ct. Apr. 30, 1992).

. D.C.Code § 16-302 (1989 Repl. & Supp.1994).

. D.C.Code § 49-202 (1990 Repl. & Supp.1994).

. D.C.Code § 16-305 (1989 Repl. & Supp.1994). The dictionary definitions of "any” and "person” are consistent with § 49-202. "Any” is defined in Webster's Dictionary as “one or some indiscriminately of whatever kind,” and "person” is defined as "human, individual." Webster’s Collegiate Dictionary 53, 867 (10th ed. 1993).

. D.C.Code § 16-302 (1989 Repl. & Supp.1994).

. Id. The 1954 Senate Report indicates that this was added because it was "emotionally abhorrent to the natural mother to join in the petition to adopt her own natural child.” S.Rep. No. 1379, 83d Cong., 2d Sess., § 4 (1954).

. A similar statutory framework has been held to include the plural and thus permit the joint petition to adopt by two unmarried persons. In re Tammy, [416 Mass. 205] 619 N.E.2d 315, 318-19 (1993).

. Indeed, it is fair to say they did not envision “any person” who was gay or lesbian successfully petitioning to adopt. The court draws this conclusion from the fact that it has been only in recent history that homosexuality did not automatically result in a birth parent losing custody of his or her child in contested proceedings.

. See In re D.R.M., 570 A.2d 796, 804 (D.C.1990).

. H.R.Rep. No. 1274, 75th Cong., 1st Sess., at 1 (1937).

. See S.Rep. No. 1379, supra note 8, pmbl.

. See Dean v. District of Columbia, [653 A.2d 307] (D.C.1995).

. Rosenberg v. United States, 297 A.2d 763, 765 (D.C.1972) (citations omitted).

. H.R.Rep. No. 1274, supra note 12, at 1.

. Id.

. In re L.W., F.W., 613 A.2d 350, 355 (D.C.1992); see also In re L.L., [653 A.2d 873] (D.C.1995) (stating that “[i]n adoption cases ... the decisive consideration is the best interests of the child”); In re D.I.S., 494 A.2d 1316, 1322 (D.C.1985) (holding that "[t]he 'best interests of the child’ standard has been the basis of decision in child custody cases in this jurisdiction since the beginning of this century”); In re Baby Boy C., 630 A.2d 670 (D.C.1993), cert. denied, — U.S. —, 115 S.Ct. 58, 130 L.Ed.2d 16 (1994).

. To be sure, as the decision in Bruce M. notes, the adoption statute provides a number of factors which must be satisfied before an adoption can be decreed. In re Bruce M., supra note 1, at 1014. These factors, however, address procedural requirements to be met. They do not reflect the substantive intent of the legislation. Instead, the substantive intent is reflected in subsections (b)(1), (2) and (3) of D.C.Code § 16-309. These provisions address, respectively, the fitness of the adoptee, the fitness of the petitioner, and the best interests of the child. If either of subsection (b)(1) or (b)(2) could not be satisfied, then it would seem that subsection (b)(3) could not be met. Thus, it could be said that the "best interests” test does trump all other substantive concerns and, by doing so, reflects the overarching principle of the legislation.
Moreover, by its very terms, the best interests standard is elastic because of its breadth.

. Lever Bros. Co. v. United States, 981 F.2d 1330, 1333 (D.C.Cir.1993).

. Baghini v. District of Columbia Dep't of Empl. Servs., 525 A.2d 1027, 1029 (D.C.1987) (quoting Harrison v. J.H. Marshall & Assocs., Inc., 271 A.2d 404, 406 (D.C.1970)).